UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PETER BARRESI,          )<br>   Plaintiff,          )<br>                              )<br>v.                           )<br>                              )<br>LYNX RESTORATION GROUP, INC. (f/k/a )<br>TWISTED-USA, LLC d/b/a TWISTED )<br>NORTH AMERICA), ROD C. KELLER, JR., )<br>and CHRISTIAN OKONSKY,    )<br>                              )<br>                              )<br>   Defendants.          ) | Case No. _____ |

## COMPLAINT

Plaintiff Peter Barresi, as his complaint, alleges as follows:

1.  In July 2021, Peter Barresi saw Twisted North America's ("Twisted") online ad for a reconditioned Land Rover Defender and immediately fell in love. Twisted promised to use fancy add-ons to remake and customize old, classic Land Rovers. After speaking to Twisted's then-CEO (Thomas Maxwell), Mr. Barresi signed a sales contract and wired Twisted a large deposit. Twisted promised to deliver the vehicle by May 2022—less than one year later.

2.  After Mr. Barresi wired Twisted his deposit, he and Mr. Maxwell held monthly update meetings. Mr. Barresi also met the designer and received a mock-up of his vehicle. Mr. Maxwell continually assured Mr. Barresi that the vehicle would be manufactured and delivered in the many communications they had during this time.

3.  However, as many months and the deadline for delivery passed, it became clear that all Mr. Barresi was receiving were promises and stories, and that Twisted was trying to lull Mr. Barresi into believing that it might soon deliver the vehicle.

1

4.      After receiving repeated assurances from Twisted, but with no new delivery date in sight, Mr. Barresi demanded a full refund of his deposit. In response, the company promised to issue a full refund.

5.      However, Mr. Maxwell, who had promised the refund to Mr. Barresi, vanished, and new leadership came on board. No refund was issued. On information and belief, after Mr. Maxwell was ousted, Defendants Rod C. Keller, Jr. and Christian Okonsky continued to operate Twisted.

6.      After his departure, Mr. Maxwell told Mr. Barresi that the company's founder (Okonsky)—who had a history of defrauding customers—told him this about Twisted customers: "These people have so much f***ing money, they won't miss it."

7.      Twisted failed to deliver the vehicle to Mr. Barresi or to refund his deposit as promised; in addition, Twisted, Keller, and Okonsky defrauded Mr. Barresi as alleged herein.

8.      Mr. Barresi files this lawsuit to recover his deposit, which Twisted has wrongfully withheld under the July 2021 sales contract, for treble damages, punitive damages, and for other remedies allowable under Virginia law.

**PARTIES**

9.      Plaintiff Peter Barresi is an individual and citizen of the state of Florida.

10.     Defendant Lynx Restoration Group, Inc. ("Lynx") is a Delaware corporation that may be served with process through its registered agent, Corporate Creations Network, Inc., at 5444 Westheimer #1000, Houston, Texas 77056. Lynx was formerly known as Twisted-USA, LLC, a Texas limited liability company.  Twisted-USA, LLC converted to Lynx on or about February 23, 2023. Twisted-USA, LLC previously operated under the trade name Twisted North

America. Lynx, as Twisted's successor, has liability for the contracts and tortious conduct of Twisted as alleged herein.  Lynx is a citizen of Delaware and Texas.

11. Defendant Rod C. Keller, Jr. is an individual and citizen of the state of Texas, who may be served with process at 5104 Fairview Drive, Austin, Texas 78731 or wherever he may be found.

12. Defendant Christian Okonsky is a citizen of the state of Texas, who may be served with process at 3019 Thousand Oaks Drive, Austin, Texas 78746 or wherever he may be found.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship.

14. The Court has personal jurisdiction and venue pursuant to 28 U.S.C. § 1391(b) and a mandatory jurisdiction and venue provision in the parties' sales contract, which states: "Client agrees not to initiate any proceeding against Twisted North America related to this Agreement or client's order in any court other than a state or federal court located in the Commonwealth of Virginia."

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

15. Twisted was in the business of modifying utility and sports vehicles for clientele in the United States and Canada. Twisted held a license from United Kingdom-based Twisted Group, Ltd. ("Twisted Group") under which Twisted utilized the Twisted brand name.

16. Mr. Barresi and Twisted entered into a July 19, 2021, Sales Invoice ("Invoice") and July 21, 2021, Twisted-USA, LLC (DBA 'Twisted North America') Standard Terms and Conditions ("Terms and Conditions") (together, the "Contract") under which Twisted agreed to

deliver a custom modified Land Rover Defender vehicle (the "Vehicle") to Mr. Barresi in exchange for $280,000. The Contract specifies May 2022 as the "Estimated Handover Month."

17. Upon signing the Contract, Mr. Barresi paid a $140,000 deposit to Twisted, consisting of $45,000 for the Base Vehicle Purchase and a $95,000 Twisted Works First Deposit. On or about July 28, 2022, Mr. Barresi agreed to an Engine Upgrade for the Vehicle for $20,000 and paid $20,000 to Twisted. The $160,000 paid to Twisted is referred to herein as the "Deposit".

18. On July 22, 2021, the day after Mr. Barresi signed the Contract, Mr. Maxwell (Twisted's then-CEO), emailed Mr. Barresi to congratulate him on "becoming the owner of a Twisted Defender," and to introduce Mr. Barresi to the rest of the Twisted team.

19. Then on July 27, 2021, Mr. Barresi attended a Zoom meeting with Twisted's designer Paul Kilvington, to go over the specifications of the Vehicle. After the Zoom meeting, Mr. Kilvington sent Mr. Barresi the following mock-up of the Vehicle as designed:



20. Rather than focus on building and delivering the Vehicle for which Mr. Barresi already paid the Deposit, Twisted explored ways to extort more money from Mr. Barresi. Indeed, on September 21, 2021, Mr. Maxwell emailed Mr. Barresi and asked Mr. Barresi to invest in the company.

> **Twisted Investment Opportunity**
> 2 messages
>
> Tom Maxwell <tom.maxwell@twistedautomotive.com>     Tue, Sep 21, 2021 at 9:38 AM
> To: Peter Barresi <peter.barresi@gmail.com>
>
> Hey Peter,
>
> As briefly discussed on Whatsapp, there is a small opportunity to invest in the current round.
>
> The offer is a convertible note in blocks of $50K.
> The note matures after 24 months, where the holder then has the option to either receive their initial investment back, plus the same again (doubling up) or alternatively convert their blocks into equity.
>
> If they convert to equity, the position is 0.5% per block.
>
> I have four blocks that have come up, so an opportunity up to $200K (or 2%) of the company.
>
> If this sounds interesting I can introduce you to Jeremy Green on my team who is in charge of this raise.
>
> Thanks,
> Tom
>
> --
> **Tom Maxwell**

21. Mr. Barresi passed on the opportunity to provide Twisted with more of his money.

22. At some point over the next year, Mr. Maxwell was replaced as Twisted's CEO.

23. On September 2, 2022, Defendant Rod Keller, Twisted's new CEO, informed Mr. Barresi that Twisted's parent company, Twisted Group, terminated the license under which Twisted used the Twisted brand. As a result of Twisted Group terminating Twisted's license, Twisted no longer had the authority or ability to lawfully sell, manufacture, restore or deliver the Vehicle Mr. Barresi ordered.

24. At the time Keller sent the email, the Vehicle was already four months late. Keller's September 2022 email caused Mr. Barresi to believe—correctly as it turns out—that the Vehicle may never be delivered.

25. Mr. Barresi responded to Keller's email the same day and expressed his concerns. Mr. Barresi also called and spoke with Keller. Mr. Barresi requested a full refund of all Deposit monies that Mr. Barresi had paid. Keller assured Mr. Barresi that he would have Twisted's operations running smoothly in no time, and if he did not, he would provide a full refund to Mr. Barresi.

26. On or about September 17, 2022, Keller provided an update concerning the license dispute, notifying Mr. Barresi that Twisted had reached an agreement on general terms with Twisted Group for a new license in North America and Twisted expected to sign an agreement with Twisted Group in the coming days.

27. Twisted never provided further updates on the status of its license dispute with Twisted Group. Upon information and belief, Twisted never obtained a new license agreement with Twisted Group and accordingly continues to lack the authority or ability to lawfully sell, manufacture, restore or deliver the Vehicle ordered by Mr. Barresi.

28. On or about November 3, 2022, Keller notified Mr. Barresi and other Twisted customers that the company had been unsuccessful in its attempts to raise capital to continue its operations.

29. Mr. Barresi responded to Keller's November 2022 email and again requested a refund. Mr. Barresi spoke with Keller on the phone in or about mid-November 2022 during which time Keller agreed to provide a refund to Mr. Barresi.

30. Mr. Barresi remained in frequent contact with Mr. Maxwell even after Keller replaced Mr. Maxwell as Twisted's CEO. Mr. Maxwell admitted to Mr. Barresi that Twisted's founder and chairman, Okonsky, has defrauded customers before. Mr. Maxwell also told Mr. Barresi that Okonsky had told him, "these people [Twisted's customers] have so much fucking money, they won't miss it."

31. On February 23, 2024, Twisted filed a Certificate of Conversion with the Texas Secretary of State's office, providing notice that Twisted had converted to a Delaware corporation named Lynx Restoration Group, Inc. According to Delaware Secretary of State records, Lynx Restoration Group, Inc. was formed on February 23, 2024.

32. Twisted has failed to deliver the Vehicle to Mr. Barresi and has made it clear that it never will deliver the Vehicle to Mr. Barresi. Twisted has also failed to refund Mr. Barresi's $160,000 Deposit despite promising to do so.

## COUNT 1
**(Breach of Contract)**
**(Against Defendant Lynx/Twisted)**

33. Mr. Barresi hereby incorporates by reference the allegations contained in the paragraphs above as if stated herein in full.

34. Mr. Barresi and Twisted are parties to the Contract under which Twisted undertook a legally enforceable obligation to build and deliver the Vehicle to Mr. Barresi. Twisted has failed to build and deliver the Vehicle to Mr. Barresi.

35. In addition, Twisted's license to use the Twisted brand has been terminated and accordingly Twisted lacks the authority or ability to lawfully sell, manufacture, restore or deliver the Vehicle ordered by Mr. Barresi.

36. Mr. Barresi fully performed all his obligations under the Contract up to the time of Twisted's breach. Mr. Barresi has been damaged in the amount of the Deposit he paid to Twisted.

37. As a result, Mr. Barresi is entitled to receive the return of his $160,000 Deposit, costs of court, and any other relief deemed appropriate by the Court.

### COUNT 2
### (Anticipatory Repudiation Under Va. Code Ann. § 8.2-610)
### (Against Defendant Lynx/Twisted)

38. Mr. Barresi hereby incorporates by reference the allegations contained in the paragraphs above as if stated herein in full.

39. The contract at issue is one for the sale of goods covered by the Uniform Commercial Code. Twisted's statements indicate that it will commit a breach of the Contract that itself would give rise to a claim for damages, and/or its affirmative act render it unable or apparently unable to perform under the Contract without breaching the Contract. Twisted's acts and conduct evince an intent wholly inconsistent with an intent to perform the Contract. Accordingly, Twisted's acts and conduct constitute anticipatory repudiation under Va. Code Ann. §8.2-610.

40. Accordingly, Mr. Barresi may resort to any remedy for breach of the Contract under Va. Code Ann. § 8.2-703 or § 8.2-711, including but not limited to canceling the Contract and recovering his $160,000 Deposit, costs of court and any other relief deemed appropriate by the Court.

**COUNT 3**
**(Virginia Consumer Protection Act)**
**(VA Code Ann. § 59.1-196)**
**(Against Defendant Lynx/Twisted)**

41. Mr. Barresi hereby incorporates by reference the allegations contained in the paragraphs above as if stated herein in full.

42. The contract at issue is covered by Virginia Consumer Protection Act ("VCPA") claim against Twisted pursuant to Va. Code Ann. § 59.1-200, and Mr. Barresi is entitled to pursue a claim under the VCPA.

43. Twisted, and its officers and employees, violated the prohibition contained in Va. Code Ann. § 59.1-200(A) (14) against using any deception, fraud, false pretense, false promise or misrepresentation in connection with a consumer transaction. They also violated the prohibition contained in Va. Code Ann. § 59.1-200(A) (8) against advertising goods or services with intent not to sell them as advertised.

44. Twisted, and its officers and employees, committed these VCPA violations deliberately and willfully, or in the alternative, did so negligently because Twisted, and its officers and employees, failed to maintain procedures reasonably adopted to avoid the violations.

45. As a result of the VCPA violations against him, Mr. Barresi suffered substantial actual damages for which he is entitled to be compensated, including but not limited to the $160,000 Deposit.

46. Mr. Barresi is also entitled to recover three times his actual damages for each willful violation of the VCPA, and his costs and reasonable attorneys' fees as allowed under the VCPA.

## COUNT 4
### (Fraud)
### (Against All Defendants)

47. Mr. Barresi hereby incorporates by reference the allegations contained in the paragraphs above as if stated herein in full.

48. Defendants Okonsky, Keller and Twisted made false statements of material fact regarding their ability and their then-present intention to perform in order to induce Mr. Barrie to enter into the contract at issue. When the contract was made, Defendants had no ability or intention of fulfilling the contract. Defendants profited from the fraud by taking and retaining Mr. Barresi's deposit, which they never applied to the production of the vehicle promised. Mr. Barresi has been directly injured by the loss of his money.

49. Thereafter, Defendants actively deceived Mr. Barresi to cover up their fraud and to deter Mr. Barresi from taking prompt legal action.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against Defendants for:

a. Compensatory Damages in an amount to be proven at trial, plus prejudgment interest thereon;

b. Punitive Damages;

c. Treble Damages, to the extent available by law;

d. Reasonable attorney's fees, expert witness fees, and other costs of litigation; and

   Any other relief which the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues to triable in this action.

September 1, 2024.  /s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
209 Madison Street, Suite 501
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Plaintiff*

*Of Counsel for Plaintiff*:

**RIGBY SLACK LAWRENCE PEPPER + COMERFORD, PLLC**
David C. Lawrence (*Pro Hac Vice Pending*)
3500 Jefferson Street, Suite 330
Austin, Texas 78731
Telephone: (512) 782-2060
dlawrence@rigbyslack.com